**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MATTHEW W. LANCE,**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,**<br>    **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 22-2840** |

## <u>MEMORANDUM OPINION</u>

Plaintiff Matthew Lance, proceeding pro se, seeks judicial enforcement of a settlement agreement against employer, Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). The parties entered into this agreement to resolve a complaint Lance filed with the Occupational Safety and Health Administration ("OSHA"), and Lance maintains that SEPTA has not complied with the obligations the agreement imposed. Presently pending are the parties' cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, SEPTA's motion will be granted, and Lance's motion will be denied.

### I.   FACTUAL BACKGROUND

This lawsuit stems from a November 2021 "Confidential Settlement Agreement and Release" between Lance and SEPTA. Several years prior, Lance had filed an OSHA complaint against SEPTA, alleging violations of the National Transit Systems Security Act ("NTSSA"), 6 U.S.C. § 1142, and the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. The settlement agreement, which resolved Lance's complaint and was approved by an OSHA administrative law judge, imposed several obligations on SEPTA, two of which are relevant to the parties' present dispute.

First, Section 1 of the settlement agreement required SEPTA to "develop a program and policy for Whistleblower Anti-Retaliation to be implemented and fully effective on or before

July 1, 2022 and [] inform Lance of same."  The design of SEPTA's program was to be "guided by OSHA's Recommended Practices for Anti-Retaliation Programs published on January 13, 2017," but "[t]he parties recognize[d] that the OSHA best practices are advisory in nature and that they may be adjusted to fit SEPTA's specific needs."  In subsections (a) through (f) of this section, the settlement agreement identified several specific requirements for SEPTA's program, including that it: ensure employees are not punished for good faith reporting of safety concerns; provide employees with resources about exercising whistleblower rights; conspicuously post OSHA's Whistleblower Protection fact sheet; create a defined reporting point for employees to report suspected violations of the policy; maintain employee confidentiality to the extent practicable; and include training on whistleblower protections, including at new hire orientations, annual employee Safety Day meetings and events, and manager trainings.

Second, Section 2 of the settlement agreement required SEPTA to "remove from Lance's white card[1] and personnel file all references to and documents related to discipline assessed against Lance on October 31, 2013, October 13, 2015, and February 11, 2016."  The agreement further stated that the removal of these references and documents was to be witnessed by Lance and his union representative; that it was to take place within 30 days at a time and place of SEPTA's convenience; and that "[c]opies of all such documents will be (i) provided to Lance and (ii) placed in a confidential file maintained by SEPTA's General Counsel.  They will not be used by SEPTA in connection with any hiring, promotion, or transfer decisions."

That December, Chris Cooper, an attorney in SEPTA's Office of General Counsel ("OGC"), obtained Lance's white card and redacted all references to the three infractions

---

[1] A "white card" is a handwritten copy of a SEPTA employee's discipline record that is stored at his or her work location.  It lists each infraction by date, includes a short summary, and identifies the action taken in response.

identified in the settlement agreement.  Lance, who was present for these redactions, disagreed

that this action complied with the settlement agreement, which he argued required "removal, not

redaction" of references to the three infractions.  As an alternative, Cooper proposed preparing a

new white card for Lance that omitted the three infractions but otherwise copied over the

relevant information from his discipline record.  Lance disagreed with this proposal too, stating

that he did not think some of the discipline included on his old white card (beyond those

identified in the settlement agreement) had been justified, and that he did not want them copied

over to the new card.  After several more back-and-forths, during which no compromise was

reached, Cooper ultimately prepared a new white card that omitted the three infractions

identified in the settlement agreement, listed all other discipline against Lance, and added the

following addendum: "The discipline above this line were re-written by Chris Cooper in on 2-8-

22 pursuant to a settlement agreement.  The original is on file in the OGC should labor relations

need it in the future."  Cooper subsequently denied Lance's request that this addendum be

removed, telling him that "the original discipline files were always going to be kept in the

General Counsel's office," and adding that "[w]ithout a note in the file then labor relations would

not know this, should it be pertinent in the future."

        Several months later, SEPTA approved "Harassment Prevention and Retaliation Policy

(Policy A-10)," which became effective July 1, 2022.  That policy, a revision to SEPTA's

existing anti-harassment policy, provided that "SEPTA does not tolerate or condone acts of

retaliation or intimidation toward a person who, in good faith, files a complaint of discrimination

or harassment or testifies, assists or participates in any investigation into allegations of

discrimination or harassment."  The policy went on to define whistleblower

harassment/retaliation, explained that SEPTA employees had a right to report instances of

retaliation to the transit agency's Office of Inspector General, and stated that violations of this policy may result in remedial actions "up to and including termination."

Shortly after that policy took effect, Lance filed this present lawsuit to enforce the settlement agreement.[2]

## II.   LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)).  When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same.  *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).  "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts."  *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F.Supp.2d 425, 430 (M.D. Pa. 2006) (citing *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998)).[3]

---

[2] Lance's complaint pointed to 29 C.F.R. § 1982.113 as the basis for this Court's jurisdiction.  That regulation is derived from a provision of the NTSSA authorizing civil actions to enforce settlement agreements issued pursuant to its terms—as Lance and SEPTA's agreement was.  6 U.S.C. § 1142(c)(6)(A).  The statute further provides that "[t]he appropriate United States district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such order."  *Id.*

[3] The scheduling order for this case (ECF No. 11) required the party moving for summary judgment to file a separate Statement of Undisputed Material Facts, and it required the party opposing summary judgment to file both 1) a response to the summary judgment motion itself, and 2) a response identifying any objections to that Statement of Undisputed Material Facts.  While Lance filed the second of these responses (*i.e.*, his objections to SEPTA's Statement of Undisputed Material Facts), he failed to file the first.  Pro se litigants are afforded additional flexibility

### III.   DISCUSSION

In this case, there is no material dispute regarding SEPTA's actions: the record contains copies of the settlement agreement, Lance's white card, the transit agency's whistleblower protection policy, and copies of all correspondence cited by the parties.  Rather, the disagreement centers on whether those actions met SEPTA's obligations under the settlement agreement.  A settlement agreement is a contract that is subject to the ordinary rules of contract interpretation. *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79 (3d Cir. 1982).  Thus, the scope of SEPTA's obligations "is to be determined by the ordinary meaning of [the agreement's] language." *Pennsbury Village Associates, LLC v. McIntrye*, 11 A.3d 906, 914 (Pa. 2011) (quoting *Taylor v. Solberg*, 778 A.2d 664, 667 (Pa. 2001)).[4]  Under Pennsylvania law, "unambiguous writings are interpreted by the court as a question of law.  *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 n.10 (3d Cir. 1980).  Only ambiguous writings are interpreted by the fact finder. *Id.*

### A.  Preparation of the New White Card

SEPTA did not breach the settlement agreement when it prepared a new white card that omitted the three infractions but copied over all other relevant information from Lance's discipline record.  Recall that the settlement agreement required SEPTA to remove "all references to and documents related to discipline assessed against Lance on October 31, 2013,

---

with regard to procedural rules, but they are ultimately held to the same substantive standard as counseled litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013).  Accordingly, to the extent statements in Lance's own motion or his objections to SEPTA's Statement of Undisputed Material Fact are responsive to arguments in SEPTA's motion for summary judgment, they are treated as such.  Otherwise, the facts and arguments in SEPTA's filings are treated as uncontested.  *See Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003) (granting summary judgment on the premise that a plaintiff's failure to respond to one of the arguments in the defendant's motion results in his waiver of the opportunity to contest summary judgment on that ground).

[4] The settlement agreement provides that its terms shall be construed "in accordance with the laws of the Commonwealth of Pennsylvania," and neither party disputes that Pennsylvania law applies.

October 13, 2015, and February 11, 2016."  This language is clear and unambiguous, and SEPTA complied with the obligation it imposed: Lance now has a white card that includes no reference to the discipline assessed against him on those three dates.

Lance protests that SEPTA has not removed *all* references to his prior discipline, pointing to the addendum that "The discipline above this line were re-written by Chris Cooper in on 2-8-22 pursuant to a settlement agreement.  The original is on file in the OGC should labor relations need it in the future."  But on its face, this statement is not reference to the three infractions, or even the fact that infractions have been removed from Lance's white card.  It simply states that Lance's card was copied over, and that the original document was retained by OGC (something expressly permitted by the settlement agreement).  And the only reason it provides for why a new white card was created is the "settlement agreement," which likewise is not a reference to any of the three removed infractions.  Lance offers no explanation—beyond his conclusory assertion to the contrary—as to why this statement violated SEPTA's obligations under the settlement agreement.

### B.  Adoption of the Whistleblower Protection Policy

SEPTA did not breach the settlement agreement when it issued "Harassment Prevention and Retaliation Policy (Policy A-10)."  Again, the settlement agreement's language is clear and unambiguous regarding SEPTA's obligations, and it specifically identified the substantive requirements that the transit agency's anti-retaliation program had to meet.  SEPTA's actions satisfied each of these requirements.

First, the settlement agreement required SEPTA's program to "[e]nsure that employees are not punished or otherwise subjected to an adverse employment action for reporting in good

faith safety related concerns or incidents or for engaging in similar activity."  Policy A-10 does

so, providing that:

> SEPTA does not tolerate or condone acts of retaliation or
> intimidation toward a person who, in good faith, files a complaint
> of discrimination or harassment or testifies, assists or participates
> in any investigation into allegations of discrimination or
> harassment. . . .   Engaging in any activities found to be retaliatory,
> pursuant to this policy, will result in disciplinary action, up to an
> including discharge.  Disciplinary action for acts of retaliation or
> intimidation can and will be taken even if the initial allegations of
> discrimination are not substantiated.

And while this prohibition on retaliation does not directly reference workplace safety as such, it

must be read in light of the preceding section of the policy, which explains that

retaliation/harassment occurs "when an employee is subject to adverse employment actions

because they raised concerns or reported issues about hazards or violations in the workplace,"

including those related to any matter enforced by OSHA.  Taken together, these provisions

describe a program that protects employees from retaliation for good faith reporting of

workplace safety violations.

Second, the settlement agreement required SEPTA to "[p]rovide employees with

information and resources about exercising whistleblower rights."  Policy A-10—copies of

which were disseminated to SEPTA employees via the transit agency's intranet—now explains

that:

> An employee also has the right to report any purported retaliation
> to SEPTA's Office of Inspector General (OIG). Allegations of
> retaliation will be investigated by the OIG, or its delegate (Office
> of General Counsel or Equal Employment Opportunity
> Department). OIG, or its delegate, will seek to complete all
> investigations under this paragraph within ninety (90) days.
> However, some circumstances will necessitate an extension of time
> to complete the investigation. The employee may also choose to
> report purported retaliation to OSHA directly.

7

Third, the settlement agreement required SEPTA to "[c]onspicuously post the OSHA Fact Sheet Whistleblower Protection for Public Transportation Agency Workers in all reporting locations where employee notices are posted . . . in the size and format of other employee postings and with both pages of the Fact Sheet inseparable and simultaneously viewable." The parties do not dispute that SEPTA did so.

Fourth, the settlement agreement required SEPTA to "provide a defined reporting point (expected to be the Equal Employment Opportunity ("EEO") Department, the Office of Inspector General ("OIG") Department, or the System Safety Department) for employees to report suspected violations of the policy, which reports will be promptly and thoroughly investigated within 90 calendar days." As the previously quoted language shows, Policy A-10 does just that.

Fifth, the settlement agreement required SEPTA to "[m]aintain employee confidentiality to the extent practicable." The parties do not dispute that SEPTA's program does so.

Finally, the settlement agreement required SEPTA to "[i]nclude training and information on whistleblower protections; specifically, the NTSSA, into new hire orientation, SEPTA's annual employee Safety Day meeting and events, and manager training." SEPTA's motion for summary judgment points evidence showing that these trainings took place. And while Lance argues otherwise, he fails to identify any material in the summary judgment record showing a genuine dispute of fact on this point. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by [] citing to particular parts of materials in the record . . . ."); *see also* Scheduling Order (ECF No. 11), ¶ 5.C.2 ("If a party contends that a fact is in dispute, citation must be made to the joint appendix that supports the party's view that that particular fact is in dispute.").

Lance counters that Policy A-10 omitted several elements from OSHA's Recommended Practices for Anti-Retaliation Programs, including those relating to management accountability, informal reporting, and program oversight.  But as the OSHA recommendations themselves explain, they are "advisory in nature" and "do[] not interpret or create legal obligations."  And while the settlement agreement stated that SEPTA's program would be "guided by" the OSHA recommendations, it specifically authorized the transit agency to "adjust[]" them to fit its specific needs.  As a result of this permissive language, SEPTA had broad discretion to determine how to incorporate the OSHA recommendations into its anti-retaliation program, limited only by its common law duty of good faith.  *See Bethlehem Steel Corp. v. Litton Indus., Inc.*, 488 A.2d 581, 600 (Pa. 1985) (providing that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement").  The summary judgment record contains no evidence showing that SEPTA acted in bad faith when preparing Policy A-10.

Lance also objects to SEPTA's decision to issue its whistleblower protection policy as a revision to its existing anti-harassment policy instead of as a stand-alone document.  Specifically, he maintains that the settlement agreement "was not negotiated for revision or changes to SEPTA's existing civil rights harassment policy," and that it instead "was negotiated, primarily, for adoption of OSHA's Recommended Practice for Anti-Retaliation programs."  But the parties reduced their agreement to writing, and "under Pennsylvania law 'it is firmly settled that the intent of the parties to a written contract is contained in the writing itself.'"  *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 613 (3d Cir. 1995) (quoting *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21 (Pa. Super. 1995) (cleaned up)).  The settlement agreement imposed no obligation on SEPTA to issue its whistleblower protection policy as a stand-alone document, and so SEPTA's actions were consistent with that agreement.

## IV.    CONCLUSION

Because there is no dispute of material fact, and SEPTA is entitled to judgment as a matter of law, its motion for summary judgement will be granted, while Lance's motion for summary judgment will be denied.

An appropriate order follows.


**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**